IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RICHARD T NEWTON, ET AL,           No C 09-5887 VRW

    Plaintiffs,                  ORDER

    v

ARNOLD SCHWARZENEGGER, in his
official capacity as Governor of
the State of California, ET AL,

    Defendants.
_____/

        Plaintiffs Richard T Newton, Frank M McNeal and Sean A Beaton seek conditional certification of a Fair Labor Standards Act ("FLSA") collective action under 29 USC § 216(b).  Defendants Governor Arnold Schwarzenegger, Director of the California Department of Personnel Administration ("DPA") Debbie Endsley, Secretary of the California Department of Corrections and Rehabilitation ("CDCR") Matthew Cate, Chief Deputy Secretary of the California Division of Juvenile Justice ("DJJ") Bernard Warner and Director of the California Department of Mental Health ("DMH") Stephen Mayberg oppose plaintiffs' motion on the grounds that plaintiffs have failed to demonstrate they are similarly situated to

the proposed collective group and that plaintiffs' claims lack merit.

The court heard oral argument on plaintiffs' motion for conditional certification of the collective action on June 3, 2010. For the reasons set forth below, plaintiffs' motion for conditional certification is GRANTED for the limited purpose of notification.

I

Plaintiffs are employed by the state of California in a variety of correctional peace officer classifications at institutions run by the CDCR, DJJ and/or DMH. Cmplt ¶4. Plaintiff Newton is a correctional officer at Eel River Conservation Camp, and plaintiffs McNeal and Beaton are correctional officers at San Quentin State Prison. Id ¶5. Four employees at the Salinas Valley State Prison have also consented to appear in this action: medical technical assistant Troy Testo and correction officers Frank Colburn, Brenda Gibbons and Brian Messer. Id ¶6. Plaintiffs and the consenter employees are members of, and are represented by, the California Correctional Peace Officers' Association ("CCPOA") legal department. Doc #23 at 7. The CCPOA is the exclusive bargaining representative for the approximately 30,000 non-exempt employees in California Bargaining Unit 6 ("BU 6"). Id at 7 n3.

Plaintiffs allege that defendants' implementation of the state furlough policy violates the FLSA by ordering state employees to report to work on their furlough days with the promise that they will be compensated with a day off in the future but failing to pay them within the pay period in which they work, failing to count their hours worked during uncompensated furlough days toward

2

overtime and failing to keep adequate payroll records.  Cmplt ¶3. Plaintiffs seek prospective declaratory relief on the violations of the FLSA as well as attorney fees and costs.

Plaintiffs allege that on December 19, 2008 Governor Schwarzenegger issued Executive Order S-16-08 adopting a plan to implement a two-day per month furlough effective February 1, 2009 to June 30, 2010 for most of the 200,000 workers employed by the state of California.  Cmplt ¶ 8 and Ex D.  This plan provided that most state workers be given two uncompensated days off work each month, but due to the fact that state prisons are run 24 hours a day, correctional officers work on their furlough days and accrue those two furlough days per month to be taken at a later time when operationally feasible.  Id.

Plaintiffs allege that on March 5, 2009 they were notified in writing that they could bank their accrued furlough days for a period not to exceed 24 months from the end of the furlough program on June 30, 2010.  Cmplt ¶9 and Ex E.  At the end of the 24 months, any unused furlough days would revert to the state.  Cmplt ¶9.  On July 1, 2009, Governor Schwarzenegger issued Executive Order S-13-09 adopting a plan to implement a third furlough day for state employees effective July 1, 2009 to June 30, 2010.  Cmplt ¶10 and Ex F.  That order directs that "all state employees covered by the original and amended furlough plans must use their accrued furlough days prior to using vacation, annual leave, personal holiday, holiday credit, personal leave plan (PLP) credit, and compensatory time off (CTO)."  Cmplt Ex F.

Plaintiffs allege that from the initial furloughs effective February 1, 2009, plaintiffs were ordered to report to

3

work on their furlough days with the promise of being compensated with a "furlough day off" in the future. Cmplt ¶13. The state maintains a practice of establishing 12 pay periods per calendar year with pay day occurring at the end of each month. Id ¶11. The state allegedly has a longstanding practice to pay overtime pay earned during a given pay period in the pay period that immediately follows. Id ¶12. Defendants allegedly require plaintiffs to work their furlough days without paying plaintiffs within the pay period within which they work. Id ¶13. Plaintiffs allege that defendants do not maintain accurate records identifying the pay period during which plaintiffs worked on furlough days. Id.

Plaintiffs allege that as of October 1, 2009, at least 2,352,940 hours worked on furlough days remain unreimbursed to CDCR employees who are members of BU 6. Cmplt ¶14 and Ex G. Plaintiffs allege that as of October 1, 2009, at least 19,368 hours worked on furlough days remain unreimbursed to DMH employees who are members of BU 6. Cmplt ¶15 and Exs H, I. Plaintiffs further allege that defendants do not count work performed on furlough days toward plaintiffs' overtime calculation. Cmplt ¶16.

## II

The FLSA provides a right of action to an employee against his employer when the employer fails to pay overtime wages. See 29 USC §§ 203, 207. Such an employee may also bring a collective action on behalf of similarly situated employees. Id at § 216(b); see also Doe v Advanced Textile Corp, 214 F3d 1058, 1064 (9th Cir 2000). The district court may authorize the named FLSA plaintiffs to send notice to all potential plaintiffs and may set a deadline

for those potential plaintiffs to join the suit. Leuthold v Destination America, Inc, 224 FRD 462, 466 (ND Cal 2004). Individual members of the collective action must "opt in" to the suit by filing a written consent with the court. See § 216(b). Should an employee not file such written consent, he is not bound by the outcome of the collective action and may bring a subsequent private action. Leuthold, 224 FRD at 466.

Determining whether a collective action is appropriate is within the discretion of the district court. Mooney v Aramco Servs Co, 54 F3d 1207, 1213 (5th Cir 1995), overruled on other grounds by Desert Palace, Inc v Costa, 539 US 90 (2003); Leuthold, 224 FRD at 466. A collective action under the FLSA is not subject to the numerosity, commonality, and typicality rules of a class action under Rule 23. Hunter v Sprint Corp, 346 F Supp 2d 113, 117 (D DC 2004). To certify a FLSA collective action, the court must evaluate whether the proposed lead plaintiffs and the proposed collective action group are "similarly situated" for purposes of § 216(b). Plaintiffs bear the burden of making this showing. Leuthold, 224 FRD at 466.

Following the majority approach to determine whether plaintiffs are "similarly situated," district courts in this circuit have used the ad hoc two-step approach involving initial notice to prospective plaintiffs followed by a final evaluation whether such plaintiffs are similarly situated. Leuthold, 224 FRD at 466; Wynn v National Broadcasting Co, Inc, 234 F Supp 2d 1067, 1082 (CD Cal 2002). See also Anderson v Cagle's, Inc, 488 F3d 945, 951-53 (11th Cir 2007); Thiessen v General Electric Capital Corp, 267 F3d 1095, 1102-03 (10th Cir 2001); Mooney, 54 F3d at 1213-16. The court first

1  makes a determination at the "notice stage" of whether plaintiffs
2  are similarly situated, determining whether a collective action
3  should be conditionally certified for the purpose of sending notice
4  of the action to potential class members.  Leuthold, 224 FRD at 467.
5  This initial determination, based primarily on the pleadings and
6  affidavits, is subject to a fairly lenient standard requiring
7  "nothing more than substantial allegations that the putative class
8  members were together the victims of a single decision, policy, or
9  plan."  Thiessen, 267 F3d at 1102 (citations omitted).

10         At the conclusion of discovery the court makes a second
11  determination, usually on the defendant's motion for
12  decertification, utilizing a stricter standard of "similarly
13  situated."  Id at 1102-03.  During the second stage analysis the
14  court considers factors such as (1) the disparate factual and
15  employment settings of the individual plaintiffs; (2) the various
16  defenses available to the defendants with respect to the individual
17  plaintiffs; and (3) fairness and procedural considerations.  Id at
18  1103 (citation omitted).

19         The Seventh Circuit recently considered the question
20  whether plaintiffs asserting FLSA claims were not similarly situated
21  because each plaintiff "raised a different combination of the ten
22  subclaims, such that the plaintiffs could not be readily divided
23  into homogeneous subgroups."  Alvarez v City of Chicago, --- F3d
24  ----, 2010 WL 2011500 (7th Cir May 21, 2010).  In Alvarez a group of
25  54 paramedics employed by the Chicago Fire Department filed a two-
26  count collective action alleging that the City of Chicago failed
27  properly to compensate them for overtime in violation of the FLSA.
28  The district court granted the plaintiffs' motion to notify

1  prospective plaintiffs and more than 300 plaintiffs opted in.
2  Several plaintiffs who were dismissed for missing the 60-day opt-in
3  deadline filed a new action which alleged 10 subclaims under the
4  FLSA; the second action was consolidated with the collective <u>Alvarez</u>
5  action.  The district court granted the City's motion to decertify
6  the collective action and dismiss the claims on the ground that they
7  were "hopelessly heterogenous," citing the Seventh Circuit's earlier
8  opinion in <u>Jonites v Exelon Corp</u>, 522 F3d 721 (7th Cir 2008)
9  (dismissing a collective action where liability would require
10 individual fact-finding and many workers had no conceivable claim).
11 <u>Alvarez</u>, 2010 WL 2011500 at *2.  The district court held that the
12 plaintiffs were not similarly situated because each plaintiff raised
13 a different combination of the 10 subclaims and the plaintiffs could
14 not be readily divided into homogenous subgroups.  Noting that
15 arbitration pursuant to the collective bargaining agreement would be
16 a more efficient method of resolving the paramedics' claims, the
17 district court dismissed all the claims and directed the <u>Alvarez</u>
18 plaintiffs to pursue arbitration.  Id.

19         The Seventh Circuit held that the district court mistook
20 the earlier holding in <u>Jonites</u> to forbid it from splitting the
21 plaintiffs' claims into homogenous subclasses to resolve common
22 questions.  The Seventh Circuit distinguished the <u>Alvarez</u>
23 plaintiffs' claims sharing common questions with regard to each
24 theory of liability from actions where the viability of an
25 individual plaintiff's claims would depend on a detailed, fact-
26 specific inquiry.  Id at *4.  The court of appeals clarified that
27 where "common questions predominate, the plaintiffs may be similarly
28 \\

**7**

situated even though the recovery of any given plaintiff may be determined by only a subset of those common questions." Id.

### III

At the notice stage the court considers whether conditionally to certify the collective action based primarily on the pleadings and any affidavits that have been submitted. Leuthold, 224 FRD at 468. Plaintiffs submit declarations of the three named plaintiffs and four consenters describing their work experience under the furlough program to support conditional certification of the collective action. Doc ##25-29. Defendants' motions to strike the declarations are denied (Doc ##36-40), and plaintiffs' declarations will be considered for the limited purpose of conditional certification.

Applying the lenient standard for conditional certification at the notice stage of a collective action, the court determines that plaintiffs have met their burden to make a threshold showing that the putative collective action members are similarly situated in that they were subject to a single decision, policy or plan. Leuthold, 224 FRD at 468. Plaintiffs allege that defendants acting in their official capacities have violated the FLSA in the implementation of the state employee furlough program by requiring plaintiffs to work on furlough days without promptly paying them within the pay period during which they worked, failing to include time worked on furlough days toward overtime calculation and failing to maintain accurate payroll records. Cmplt ¶¶17-22. Plaintiffs allege that CDCR employees in the aggregate have not been paid for 2,352,940 hours worked on furlough days and that DMH employees have

not been paid for 19,368 furlough hours. Id ¶¶14, 15. Plaintiffs further allege that 5,259,067 furlough hours worked by CDCR employees and 40,528 hours by DMH employees have not been included in overtime calculations. Id ¶16. At the "notice stage" of analysis, conditional certification is appropriate on the basis of these allegations to notify potential plaintiffs of the collective action.

Defendants contend that the named plaintiffs are not similarly situated to other BU 6 employees who are subject to different furlough use practices or employees who have used all their furlough time. Doc #35 at 13-16. Despite the various job classifications represented in the proposed collective action, plaintiffs' claims arise from a single policy or plan. Because plaintiffs seek only prospective declaratory relief asking the court to declare that defendants' alleged conduct in implementing the furlough program violates the FLSA, individual determinations of liability for each plaintiff's claim would be unlikely.

Defendants also contend that plaintiffs have failed to show a violation of the FLSA because the written policies for self-directed furloughs at CDCR and DMH encourage the use of furloughs within the pay period and do not force employees to work all of their furlough days. Doc #35 at 17. Defendants further contend that the written furlough policies count furlough hours toward overtime calculation and submit documentary evidence to demonstrate that the state accurately computes overtime for hours actually worked. Id at 18-20. In opposition to conditional certification defendants would have the court decide the merits of the action without completing discovery or briefing a motion to dismiss or for

9

summary judgment.  Dismissal is not appropriate on consideration of whether plaintiffs are similarly situated to certify a collective action.  Even if defendants were successful in bringing a motion for decertification following discovery, the collective action would revert to individual actions on behalf of the named plaintiffs.  **Alvarez**, 2010 WL 2011500 at *5.

## IV

The court permits plaintiffs to notify the proposed collective defined as "All current or former Bargaining Unit 6 (BU 6) employees who worked for the California Department of Corrections and Rehabilitation (CDCR) or the California Department of Mental Health (DMH) at any time on or after February 1, 2009."  Doc #24 Ex A.

The parties have submitted proposed forms of notice on which they agree in certain respects.  Plaintiffs agree with defendants that the notice should include a provision informing the prospective opt-in members are not required to accept plaintiffs' counsel as their own and that they may retain their own counsel; plaintiffs' proposed notice includes such a provision.  Doc #24 Ex A at ¶7.  Plaintiffs also agree that the notice will not be issued in a pleading format featuring the court's name or signature and agree to remove any references to a "class" action.  Doc #45 at 7.  In many other respects, however, the parties disagree on the content of the notice.

The parties are ORDERED to meet and confer on the contents of the notice and the final form of notice and opt-in consent which should primarily reflect the changes proposed by defendants so as to

remove any indication that the court has assessed the merits of the action or the adequacy of representation by plaintiffs' counsel. See Doc #35 at 30-37. The final form of notice must also indicate clearly to whom the consent form should be addressed and must state that failure to file a timely consent form may result in the inability to participate in the collective action. The consent forms and questions about the litigation should be directed to the appropriate attorneys and should not be directed to the court.

V

For the foregoing reasons plaintiffs' motion for conditional certification is GRANTED. The parties must submit a revised proposed order within fourteen days of the date of this order.

Defendants must file a motion and proposed order to file under seal the documents numbered 41 through 44 in compliance with the court's Civil Local Rule 79-5 and General Order 62. Failure to do so within seven days of the date of this order may result in the documents being made part of the public record.

The parties are admonished that future submissions to the court shall comply with paragraph 1.4 of the undersigned's standing order: "Chambers copies * * * must include on each page the running header created by the ECF system."

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge